In re MISSIONARY BAPTIST FOUNDA-TION OF AMERICA, INC. (Parent Corporation) and the following of its wholly-owned subsidiaries: Management Services Consultants Associates, Inc., Associated Memorial Homes of North Texas, Inc., Associated Memorial Homes of West Texas, Inc., Associated Memorial Homes of Central Texas, Inc., Associated Memorial Homes of the Greenbelt, Inc. and Missionary Baptist Foundation of America Housing, Inc., Debtor.

Department of Health and Human Services and Health Care Financing Administration, an agency of the United States, Claimant.

Bankruptcy No. 580–00084.

United States Bankruptcy Court,
N.D. Texas,
Lubbock Division.

Feb. 24, 1984.

Dennis O. Olson, Lubbock, Tex., for debtor.

Edwin M. O'Connor, III, Lubbock, Tex., for Creditors' Committee.

Robert B. Wilson, Lubbock, Tex., trustee.

MEMORANDUM AND ORDER

BILL H. BRISTER, Bankruptcy Judge.

The Department of Health and Human Services, Health Care Financing Administration, an agency of the United States, filed motion on July 8, 1982, for leave to file proof of claim in the above case in the amount of $1,951,283.00. The date upon which the proof of claim was tendered for

filing was long after the bar date for filing claims had passed. This Court concluded that the issue is not whether the agency should be permitted to file the proof of claim, but it is concerned with the manner in which the claim will be treated in the scheme of distribution. Therefore, the clerk was directed to file the tendered proof of claim, without prejudice to the right of the trustee to challenge allowability of the claim and without prejudice to his right to show that distribution, if any, should be on bases other than that of timely filed unsecured claims. Robert B. Wilson, the trustee for debtor's estate, objected to that proof of claim, contending not only that the claim is without merit but also that the claim was not timely filed. Issue has been joined on the trustee's motion for summary judgment on the issue of timeliness of the filing of the proof of claim and this memorandum resolves the summary judgment issues. Some factual detail which was developed at an earlier hearing in October 1982, is considered to be helpful on the summary judgment challenge.

Debtor, Missionary Baptist Foundation of America, Inc. ("MBFA"), at all times relevant to this proceeding, was engaged in the business of operating nursing homes and other health care facilities in Texas, Arizona and Wisconsin. Among those facilities which it operated was Dallas Memorial Care Center in Dallas, Texas, the facility involved in this controversy.

Dallas Memorial Care Center had qualified to furnish Medicare services through the Health Care Financing Administration ("HCFA"), an agency of Health, Education and Welfare (now Department of Health and Human Services) on January 1, 1979. At all times relevant to this memorandum Group Hospital Services, Inc. ("Blue Cross") was the fiscal intermediary for the administration of the Medicare program at that facility. Blue Cross was required to periodically audit the records of each facility which had qualified to furnish Medicare services, including Dallas Memorial Care Center, in order that the proper amount of payments from HCFA to that facility could be ascertained. In that regard each qualified facility was required to file a detailed report on an annual basis, as well as interim reports on the occurrence of certain events, such as change of ownership.

MBFA acquired ownership of Dallas Memorial Care Center on June 1, 1979, approximately five months after that facility had qualified to furnish Medicare services. Upon its acquisition of the facility MBFA notified Blue Cross that it elected to end its cost reporting period on December 31 of each year, commencing on December 31, 1979. MBFA did in fact file the report which was due on December 31, 1979, covering the intervening period from its acquisition on June 1, 1979.

On April 1, 1980, MBFA entered into a management contract whereby Methodist Hospitals of Dallas contracted to manage Dallas Memorial Care Center. Methodist Hospitals of Dallas operated that facility under the management agreement until January 9, 1981. It filed the necessary report with Blue Cross for the period of its operation from April 1, 1980, through January 9, 1981. However, at the time the proof of claim was filed by Department of Health and Human Services in this case no entity had filed the required report for the period from January 1, 1980 through March 31, 1980.

MBFA filed a petition for order for relief under Chapter 11 of Title 11, United States Code on October 15, 1980. Thereafter July 31, 1981, was fixed as the date by which proof of claim in the bankruptcy proceeding shall be filed.[1] Neither Group Services,

---

1. The time for filing proofs of claim in a Chapter 11 reorganization case was set out in Rule 3001, Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of Texas, which closely paralleled the equivalent provisions of the Suggested Interim Rules. Rule 3001(b)(2) required any creditor, including the United States, whose claim is listed as disputed, contingent or unliquidated as to amount to file a proof of claim within the time prescribed by subdivision (b)(3) of Rule 3001. The failure of any such creditor to so file a proof of claim resulted in that creditor not being treated as a creditor for the purposes of

Inc., Blue Cross of Texas, HEW nor HCFA were scheduled as creditors by the debtor and none of those entities were on the list of those to whom the order fixing date for filing proofs of claim were mailed.

In February 1981 Blue Cross notified MBFA that an audit of the records of MBFA would commence in April 1981. There is no evidence that Blue Cross had any knowledge that the bankruptcy petition had been filed by MBFA at the time it scheduled that audit. There was nothing in the report filed by Methodist Hospitals of Dallas in March 1981 which reflected the bankruptcy proceedings of MBFA. Although there was some indication that the fact of pending bankruptcy was mentioned in telephone conferences between representatives of Blue Cross and of MBFA in March or April 1981 the earliest date upon which all parties acknowledge that Blue Cross was placed on notice of the bankruptcy proceeding was on May 11, 1981, when that fact was discussed in a telephone conference between a cognizant official of Blue Cross and a representative of MBFA.

The scheduled audit was not conducted in April 1981 and was not actually performed until October 1981. Although the evidence established that Blue Cross received actual knowledge that the bankruptcy was pending on May 11, 1981, almost three months prior to the last date fixed for filing proofs of claim, it took no action to timely file proof of claim and it did not seek an extension of time within which to file the proof of claim. It did not notify HCFA that MBFA had filed petition in bankruptcy until December 1981, approximately three months after it had conducted the audit and more than four months after the bar date.

HCFA took no immediate action on the belated notice that MBFA had filed a petition in bankruptcy. It did not file its proof of claim until July 8, 1982, almost one year after the date fixed for filing the proofs of

claim, more than one year after Blue Cross had received actual knowledge that the bankruptcy case was pending, and seven months after its cognizant officials had learned of the pending bankruptcy proceeding.

Blue Cross and HCFA argue that they could not have timely filed a proof of claim, notwithstanding the receipt of knowledge by Blue Cross of the pending bankruptcy in ample time to file a proof of claim, because whether any monies were owed by MBFA could not be determined until the audit had been completed. They contend that the report for the period from January 1 through March 31, 1980, had not been filed and that, notwithstanding the fact that services were actually rendered by the facility during that entire period, the nonfiling of the reports mandate that all monies which had been paid on account of Dallas Memorial Care Center operation must be refunded, dating back to June 1, 1979. The trustee opposes that position on several bases. He contends that Medicare services were actually furnished by MBFA during the three month period for which no report was filed and to require that all monies paid on account of the operation by MBFA of Dallas Memorial Care Center from time of its acquisition constitutes a penalty. Further the trustee contends that the facility was operated by Methodist Hospitals of Dallas for the period from April 1, 1980 through January 9, 1981, that Blue Cross and HCFA each knew and had reason to know that MBFA was not receiving the monies during that period of time, and to require the debtor to pay to Blue Cross and HCFA monies which it never received also constitutes a penalty. Finally the trustee alleged that when the missing report is filed and audited it will establish that MBFA was not overpaid during that period and that in fact additional monies could be owed to MBFA.

An evidentiary hearing was conducted in this case in October 1982. During the

---

voting and distribution. Rule 3001(b)(3) provided that a proof of claim shall be filed at any time prior to the approval of the disclosure statement unless (a) a different time is fixed by

the Court on notice as provided in Rule 2002 or (b) such claim is deemed filed pursuant to 11 U.S.C. § 1111(a).

course of that hearing I came to the conclusion that the parties might be fighting more over "principle" than "principal" because if the missing report was filed and the claimant proceeded with its audit required by its regulations there might be little or no monies which should change hands. Therefore I determined to pretermit resolution of the issues of timeliness of the filing of the claim, the penalty issues and the other merits of the claim and on October 14, 1982, I entered order directing the trustee to complete and file the requisite reports covering the missing period from January 1, 1980 through March 1980 and directing the claimants, Blue Cross and HCFA, to audit the records of the debtor after the missing report has been filed. I directed the claimants to break the audits into two periods ... the period from June 1, 1979 through March 31, 1980, when the facility was owned and operated by MBFA, and the period from April 1, 1980 through January 9, 1981, when the facility was still owned by MBFA but was operated by Methodist Hospitals of Dallas. Further I directed HCFA to supplement its proof of claim with the results of that audit and ordered that if the audit reflects that there is in fact a deficiency owed by MBFA for a relevant period of time I would then resolve the threshold issue of timeliness of the filing of the proof of claim and, subject to a conclusion that the claim was timely filed, would determine the merits of the claim and the remaining defenses thereto.

On January 12, 1984, the claimant filed the audit report of Blue Cross which had been conducted in response to my order of October 14, 1982. Based on that audit claimant posits that in its original proof of claim it had asserted $1,178,397.00 to be owed to it for the period from June 1, 1979 through March 31, 1980, and after the new audit had been completed the amount which it now claims is owed for that period of time has been reduced to $338,108.00. However, it increased the amount which it claimed to be owed to it for the period from April 1, 1980 through January 9, 1981 (the period of operation by Methodist Hospitals of Dallas) from $772,996.00 to $809,058.00.

I rescheduled the case for trial. In the interim the trustee filed motion for summary judgment and brief in support thereof, contending that as far as the issue of the tardily filed proof of claim is concerned there is no genuine issue as to any material fact and that the trustee is entitled to judgment as a matter of law.

Under the Bankruptcy Act of 1898 all provable claims, including claims of the United States and of any state or subdivision thereof, were required to be proved and filed in the manner provided by § 57. Claims which were not filed within six months after the first date set for the first meeting of creditors in a liquidation case were not to be allowed except a provision was made whereby the court could, upon application before the expiration of the six month period and for cause shown, grant a reasonable fixed extension of time for the filing of claims by the United States or any state or any subdivision thereof. However Rule 11–33 of the former Bankruptcy Rules set ᴏut time periods within which it was mandatory that proofs of claim be filed in a Chapter XI case. The six month period fixed by § 57n, and the provisions of the rules treating reorganization cases, were treated as statutes of limitations for all prepetition claims which were mandatory. *See* e.g. *In re Pigott,* 684 F.2d 239 (3rd Cir.1982); *In re Mellen Manufacturing Co.,* 287 F.2d 37 (3rd Cir.1961); *In re Ebeling,* 123 F.2d 520 (7th Cir.1941); *In re Tavares,* 23 B.R. 129 (Bkrtcy.D.R.I.1982); *In re Evanston Motor Co., Inc.,* 20 B.R. 550 (Bkrtcy.N.D.Ill.1982); and *In re Alsted Automotive Warehouse, Inc.,* 16 B.R. 924 (Bkrtcy.E.D.N.Y.1982).

The Bankruptcy Code provides no time limits for filing proofs of claim in a Chapter 7 liquidation case. Section 501 permits the filing of proofs of claim and the legislative history to that provision states that "the rules of Bankruptcy Procedure will set out the time limits, the form, and the procedure for filing, which will determine whether claims are timely or tardily filed." H.R. No. 95–595, 95th Cong.

1st Sess. (1977) 351; S.R. No. 95–989, 95th Cong. 2d Sess. (1978) 61, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5847, 6307. Neither the Suggested Interim Bankruptcy Rules distributed and suggested for local adoption by the Advisory Committee on Bankruptcy Rules of the Judicial Conference of the United States nor the Local Bankruptcy Rules adopted for the United States Bankruptcy Court for the Northern District of Texas specifically considered when a proof of claim should be filed in a Chapter 7 case. However those interim rules did treat the issue as to when a proof of claim in a Chapter 11 case was required to be filed. As is mentioned earlier in this memorandum a creditor whose claim is scheduled as disputed, contingent or unliquidated as to amount was required to file proof of claim prior to the approval of the disclosure statement. The list of creditors prepared and filed with the court constitutes *prima facie* evidence of the validity and amount of claims of creditors which are not listed as disputed, contingent or unliquidated as to amount. When a creditor is satisfied with the treatment of his claim by the debtor in the schedules it is not necessary for the holder of such claim to file a proof of claim. In this case the claim asserted by HCFA and Blue Cross was not scheduled in any manner. Therefore, if the claimant is to share in distribution in this case with those claims which were timely filed it must appear that its failure to timely file its proof of claim was justified. I cannot make that finding.

■ It is undisputed that the cognizant officials of Blue Cross had actual knowledge of the pending bankruptcy of MBFA on May 11, 1981, two and one-half months prior to the bar date of July 31, 1981, for filing proofs of claim. Thus it had a duty to protect its interest by making inquiry as to the status of the bankruptcy case. I recognize that the trustee also became cognizant of the existence of Blue Cross and HCFA as possible creditors at least by May 11, 1981, and that neither he nor the debtor

amended the schedules to insure that Blue Cross and HCFA timely received notices of relevant hearings or other proceedings in the case. The trustee and the debtor argued that there was no duty on them to amend the schedules to reflect Blue Cross or HCFA as creditors because in their opinion the debtor owed nothing to Blue Cross and HCFA. I am not persuaded by that argument. They knew that there was at least the possibility of a claim being made by HCFA and Blue Cross. However, the greater duty was on the claimants. Creditors of far less sophistication daily make inquiries to the clerks of this court concerning pending bankruptcy cases, obtaining copies of pleadings and notices, and insuring that their name is placed on the list of those to receive notice of any hearings or other action in the case. Blue Cross did nothing in that interim of two and one-half months after it *knew* that the bankruptcy case was pending to protect its interests in that regard. It knew or had reason to know that it was not scheduled by the debtor because it had received no formal notice from this Court in the bankruptcy case. Inquiry notice of the bar date prevents allowance of a tardily filed claim. *See CBS Millwork Supply*, 21 B.R. 960, 963 (Bkrtcy.E.D.Pa.1982).

In fact, as far as is reflected by the record, it did not even advise the officials of HCFA that a bankruptcy was pending until December 1981, more than four months after the bar date. Inexplicably HCFA did nothing with that information for an additional seven months and filed its initial proof of claim on July 9, 1982, almost one year after the bar date.

■ Blue Cross was negligent in protecting its interest and failed to timely file proof of claim. The issue, however, is whether "notice" to Blue Cross is also "notice" to the Department of Health and Human Services, Health Care Financing Administration, an agency of the United States. That inquiry must be answered in the affirmative and HCFA does not con-

**472**

tend otherwise. Further I am guided by two district court cases which have treated the relationship between private insurance carriers and the government in Medicare cases and have reached the same conclusion. *See LeCompte v. Aetna Insurance-Medicare Claims,* 397 F.Supp. 415 (W.D. Okla.1975); *Peterson v. Richardson,* 370 F.Supp. 1259 (N.D.Tex.1973). *LeCompte* cited *Peterson v. Richardson* for the following proposition:

> 42 U.S.C. § 1395u provides that the Secretary of Health, Education and Welfare may contract with private insurance carriers to administer the Medicare Act. In this capacity a private insurance carrier is an agent of the United States and the United States is the real party in interest in any suit based on the administration of Medicare claims.

I conclude that Department of Health and Human Services, Health Care Financing Administration, an agency of the United States, was placed on inquiry notice of the pendency of the bankruptcy case on May 11, 1981, in ample time to inquire and timely file proof of claim. Its failure to timely file its proof of claim means that its claim must be disallowed.

It is, therefore, ORDERED by the Court that summary judgment be, and it is hereby, entered on behalf of the trustee Robert B. Wilson against the Department of Health and Human Services and Health Care Financing Administration, agency of the United States and that the claim of HCFA is disallowed as being tardily filed.

HCFA raised an issue in its brief that, notwithstanding whether its claim was timely filed, its claim is nondischargeable. This summary judgment is without prejudice to any right which HCFA might have to develop that challenge by pleadings, briefs of authority, and proof.

All relief not herein granted is denied.

The Clerk is directed to file this order and to furnish a copy to the attorneys of record.